## APPEAL OF AMERICAN MILLS CO.

Docket No. 1994.   Submitted April 30, 1925.   Decided September 7, 1925.

Value of taxpayer's closing inventory, based on market, sustained.

*A. B. Hawkins, C. P. A.*, for the taxpayer.
*Willis D. Nance, Esq.*, for the Commissioner.

### Before IVINS and MORRIS.

This appeal is from the determination of a deficiency in income and profits taxes for the year 1918 in the amount of $37,813.24. The only question involved is the value of the taxpayer's closing inventory for the year 1918. From the pleadings and oral and documentary evidence the Board makes the following

### FINDINGS OF FACT.

The taxpayer is a Georgia corporation, with its principal office at Atlanta. It is engaged in the business of buying and selling twine and cordage.

The general method of conducting its business is along the following lines: Salesmen are employed to visit the trade and secure orders. As these orders are received, taxpayer places orders with the mills for the make-up of the goods required, with shipping instructions. The goods when completed are shipped by the mills direct to taxpayer's customers, but are invoiced directly to the taxpayer, who in turn bills its customers for the selling price agreed upon. If the goods are returned for any cause whatever they are retained by the taxpayer and placed in stock for future sale. Prior to 1918 taxpayer kept but a very small quantity of merchandise on hand. Such as it did keep was standard-grade goods, to fill emergency and rush orders from the trade for that class of goods, and seldom, if ever, exceeded in value the sum of $15,000.

After the entry of this country into the World War, the better grades of cotton were required in the filling of Government contracts, and those grades were no longer available for the manufacturing of twine and cordage. Mills engaged in turning out these products found it necessary, in order to supply the demands of the trade, to resort to floor sweepings, linters, and paper as a substitute for the better grades of cotton used in the manufacture of their pre-war products.

At November 11, 1918, the date of cessation of hostilities, taxpayer was considerably in arrears in its deliveries to the trade. Goods scheduled for delivery months prior to that time had been

unavailable. Between that date and the close of the year 1918 the mills continued to make shipments on taxpayer's orders and attempted to catch up with their delayed ·deliveries. In the meantime conditions had arisen under which taxpayer's customers had no further use for the quantities of twine and cordage ordered earlier in the year, and delivery of which was long overdue. Better grades of goods were being made available to the trade, and there was no longer an unrestricted market for war substitutes. As a result of these conditions shipment after shipment made during the last two months of the war was rejected by the taxpayer's customers and returned to its warehouse. Of the total returned sales for the entire year, approximating $172,500, all but approximately $18,000 were returned in the last two months of the year. It was these returned sales which swelled the taxpayer's inventory to a very considerable amount, entirely out of proportion to any inventory previously carried.

Of the total inventory on hand at the close of 1918, 85 to 90 per cent thereof was made up of goods rejected and returned by customers. These goods were all war-time products manufactured from the cheaper substitutes, and large quantities were found to be damaged, soiled, and otherwise rendered unfit for sale at normal prices and unusable in the normal way. Also, by far the greater part of these goods were specialties which, with respect to sizes, ply, and twist, had been manufactured to order to meet the particular requirements of diverse businesses.

When invoices were received from the mills for merchandise shipped to customers, taxpayer charged the amount thereof to "Merchandise stock" account. When taxpayer invoiced its customers for goods shipped direct by the mills the cost of such goods to the taxpayer was credited to the same account. If goods were returned by customers, the original cost thereof was charged back into that account. Therefore, in the "Merchandise stock" account, the taxpayer had a perpetual inventory at cost of all goods on hand, and the credit balance of that account at all times reflected the actual inventory on hand at cost value. On December 31, 1918, the credit balance in the "Merchandise stock" account was $216,257.17. On the same date Armand May and J. W. Lundeon, respectively, the president and assistant sales manager of taxpayer corporation, in collaboration with each other, inventoried all merchandise on hand, assigning to each class of goods in the inventory a value which in their best judgment reflected the market value thereof under prevailing market conditions. The market value with respect to all items in the inventory was, at the inventory date, lower than cost. The value placed upon the inventory by these two officers amounted to

$168,532.18. In order that the "Merchandise stock" account would reflect the value of the physical inventory, that account was credited and "Profit and loss" account debited with the sum of $47,724.99.

During the months of January and February of 1919 taxpayer devoted its efforts to unloading its inventory, but with little success. Such sales as were made were in most instances at selling prices which were less than the values at which the goods were included in the 1918 closing inventory. A large quantity of the goods included in that inventory are still on hand and no market therefor exists.

The taxpayer computed the net income reported in its return for 1918 by using the inventory value of $168,532.18 determined by its officers. It failed to take into account, however, an inventory of goods on hand at its Columbia warehouse of a value of $2,319.65, and in this respect the taxpayer admits error. The Commissioner rejected the inventory value shown on the return and substituted therefor the sum of $218,576.82, this being the cost value of the inventory.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 10 days' notice, under Rule 50.

### OPINION.

Morris: The evidence is clear that the taxpayer's inventory consisted principally of returned merchandise, inferior in grade due to the inability of manufacturers to secure cotton, damaged in shipment, and unsalable to the general trade, as it was manufactured to meet the needs of some particular customer. At the close of 1918 the conditions which created the market for inferior twines and cordage had disappeared and the pre-war product was again available. These conditions combined to reduce the market value of the taxpayer's inventory below cost. We are satisfied that the taxpayer made no arbitrary reductions in its closing inventory for 1918, but that such inventory was taken on the basis of cost or market, whichever is lower, and reflected the market value as of that date. Efforts were made to dispose of the goods on hand immediately after the close of the year, and what few sales were made were below the inventory value set up by the taxpayer. In view of these facts we are of the opinion that the inventory value of $168,532.18 plus the admitted inventory in the Columbia warehouse of $2,319.65 is correct and that the deficiency should be computed upon that basis.

Arundell not participating.